UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVIS GLENN,<br><br>            Plaintiff,<br>   v.<br><br>AMERICO,<br><br>            Defendant. | CASE NO. 2:24-cv-00184-TL<br><br>ORDER ON MOTION TO DISMISS |

This matter is before the Court on Defendant Americo's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b) for Failure to State a Claim and Lack of Standing. Dkt. No. 33. Having reviewed Plaintiff's response (Dkt. No. 37), and the relevant record, the Court GRANTS Defendant's motion.

## I. BACKGROUND

### A. Factual Background

This case arises from Plaintiff Travis Glenn's allegedly improper termination from his appointment with Defendant as an independent life insurance broker. Dkt. No. 5 at 8. Plaintiff was appointed to Defendant "as an independent life insurance broker" in February 2021, which allowed him to present Defendant's "life insurance, health and financial protection products to his clients." *Id.* Plaintiff's first appointment to Defendant began in February 2021 and was ended by Defendant in July of the same year. *Id.* Plaintiff was reappointed in September 2021, and while the termination date is unclear,[1] it appears that Plaintiff's second appointment to Defendant ended in January 2022. *Id.* Plaintiff alleges that he did not receive 120 days' notice by Defendant prior to termination, though it is unclear whether Plaintiff received *any* advance notice of either the terminations or the facts surrounding the terminations. *Id.* at 9.

During Plaintiff's tenure with Defendant, Plaintiff "paid the price of acquisition for all of his clients"—yet while Plaintiff alleges that the average cost for him to acquire each client is $1,280 within the insurance industry, he does not detail the specific prices of acquisition that he actually paid. *Id.* at 10.

Following Plaintiff's first termination, Defendant sent letters to Plaintiff's clients indicating that Plaintiff had been terminated from his appointment with Defendant, and asking the clients to "appoint a new agent to their cases." *Id.* at 9.

Between Plaintiff's first termination and his second appointment with Defendant, four of Plaintiff's previous accounts lapsed. *Id.* at 10. Plaintiff did not receive notice "that these accounts were pending lapse." *Id.* When Plaintiff was appointed for the second time, he had a $5,126

---

[1] Plaintiff alleges that his second appointment lasted from September 23, 2021 to January 11, 2021. Dkt. No. 5 at 8. The Court assumes that Plaintiff intended to allege that his second appointment lasted until January 11, *2022*.

1  "chargeback" from Defendant (while Plaintiff's complaint does not explain what a chargeback is
2  or how it works, the Court understands it to be a refund for a portion of the insurance producer's
3  commission due from the insurance producer to the insurance company when a customer
4  terminates an insurance policy early). *Id.*

5  Following Plaintiff's second termination, Defendant submitted a report to "Vector One,"
6  which is a "[c]ommercial [d]ebt posting board for insurance and business to business debt," and
7  which other carriers use "to determine the quality of business a prospective agent might bring
8  with a new appointment." *Id.* at 11. Due to Defendant's report, Plaintiff alleges that he has been
9  "unable to gain appointments with some of the preferred carriers." *Id.* Defendant also made
10 Plaintiff ineligible for re-appointment following his second termination. *Id.*

11 Plaintiff alleges that Defendant "committed several violations of Washington State
12 Insurance Law, Tort Law Violations and Contractual Breach of agreement between the two
13 parties." *Id.* at 8.

14 **B.   Procedural Background**

15 Plaintiff filed the instant complaint on February 13, 2024. Dkt. No. 5. Summons was
16 electronically issued on February 26, 2024 (Dkt. No. 14), and after a motion for service by the
17 Court (Dkt. No. 17), Defendant agreed to waive service of summons on April 22, 2024 (Dkt. No.
18 21). Defendant filed the instant motion on May 24, 2024. Dkt. No. 33.

19 Following Defendant's Motion, Plaintiff filed a motion for summary judgment (Dkt. No.
20 51), which the Court denied with leave to re-file if appropriate following the Court's order on
21 Defendant's motion to dismiss (Dkt. No. 54). Plaintiff filed a subsequent motion for
22 reconsideration of this decision, which the Court denied. Dkt. No. 58.

23

24

## II. LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### A. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss may be brought where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject-matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject-matter jurisdiction may be either a facial attack (challenging the sufficiency of the pleadings) or a factual attack (presenting evidence contesting the truth of the allegations in the pleadings). *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "When reviewing a [facial] dismissal pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States,* 859 F.3d 1152, 1156–57 (9th Cir. 2017)). However, "[i]f the moving party converts the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe*, 392 F.3d at 362 (quotation and citation omitted). When addressing a factual attack, a court may consider evidence outside of the complaint without converting the motion to dismiss into a motion for summary judgment. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

**B.  Motion to Dismiss Under Rule 12(b)(6)**

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc.*, 926 F.3d at 1122 (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC*, 859 F.3d at 1156–57).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Or. Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023) (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). A revised complaint would replace the current complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012) (en banc) ("the general rule is that an amended complaint supersedes the original complaint and renders it without legal effect"). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## III. DISCUSSION

### A. Dismissal for Lack of Subject-Matter Jurisdiction

Defendant seeks to dismiss Plaintiff's purported legal theories of "unlawful disregard to COVID-19 state and federal guidelines" and "taxes" under Rule 12(b)(1), arguing that Plaintiff lacks standing to bring these claims. Dkt. No. 33 at 8, 10.

#### 1. Claim Related to Covid-19 State and Federal Guidelines

Plaintiff alleges that "[i]n addition to the 90 day grace period [that clients are provided to satisfy their past-due balances] Americo was mandated by the State of Washington, under emergency order 20-02 to extend the grace period for another 60 days." Dkt. No. 5 at 10. This resulted in the improper termination of Plaintiff's clients' policies. *See id.*

Defendant argues that Plaintiff does not allege that he was injured by this alleged behavior by Defendant, and that he therefore does not have standing. Dkt. No. 33 at 12. The Court agrees.

> To demonstrate standing, a plaintiff must plausibly plead facts to establish the following "'three elements'": (1) that he "suffered an injury in fact," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The presence of an injury in fact is the 'first and foremost' element a plaintiff must show to satisfy standing." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). "The pleaded injury must be both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "To be 'particularized,' 'the injury must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "To be 'concrete' the injury 'must

actually exist'—that is, it must be 'real' and 'not abstract' or purely 'procedural'—but it need not be tangible." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 352 (2016) (Ginsburg, J., dissenting))

Plaintiff alleges that Defendant's failure to provide a 60-day extension of the grace period for clients to satisfy their past-due balances resulted in the improper termination of Plaintiff's *clients'* policies—not any injury to Plaintiff, as is required to establish standing. *See Dutta*, 895 F.3d at 1173. Plaintiff does not purport to bring this claim on behalf of the injured clients (nor could he), and he does not articulate any injury that *he* suffered due to the complained-of conduct. For this reason, Plaintiff has not alleged an injury which could confer standing to bring this claim, and the Court therefore lacks jurisdiction over his claim related to COVID-19 State and Federal Guidelines.[2]

However, at this stage of the proceedings, it is not clear that Plaintiff would be unable to make any allegations of injury upon amendment. Accordingly, Plaintiff's claim related to COVID-19 State and Federal Guidelines is DISMISSED WITHOUT PREJUDICE.

### 2. Claim Related to Taxes

Plaintiff alleges that Defendant has failed to send him any tax information and that, as a result, he may be penalized for filing his taxes late. Dkt. No. 5 at 12. Defendant argues that because Plaintiff has not been injured by this alleged conduct, he has no standing to pursue a claim for damages related to this conduct. Dkt. No. 33 at 15.

The Court agrees with Defendant. Plaintiff has not made any allegation that Defendant's failure to provide him with tax information is improper, or that he was damaged due to this

---

[2] Because the Court finds that Plaintiff does not have standing for his claim related to COVID-19 State and Federal Guidelines, the Court need not consider Defendant's request for judicial notice of the State of Washington Insurance Commissioner Emergency Order No. 20-02 (Dkt. No. 34).

ORDER ON MOTION TO DISMISS - 7

failure—in fact, Plaintiff admits that he "may be" penalized in the future for "filing late," indicating that any potential penalties have not yet occurred. *See* Dkt. No. 5 at 12. For Plaintiff to establish standing through future injury, the thread of injury must be "certainly impending"— "allegations of *possible* future injury are not sufficient." *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (emphasis in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Plaintiff's vague allegation of possible future injury is insufficient to establish standing, and the Court therefore lacks jurisdiction over his claim related to taxes based upon the allegations in the current complaint.

However, again, at this stage of the proceedings, it is not clear that Plaintiff would be unable to make any allegations of injury upon amendment. Accordingly, Plaintiff's claim related to taxes is DISMISSED WITHOUT PREJUDICE.

**B.    Dismissal for Failure to State a Claim**

Defendant additionally seeks to dismiss all of Plaintiff's claims for failure to state a cause of action. Dkt. No. 33 at 8. The Court discusses each of Plaintiff's remaining claims in turn.

**1.    Claim for Unlawful or Wrongful Termination**

Plaintiff alleges that Defendant wrongfully terminated his appointments "without legal cause or notice" under RCW 48.17.591, which he alleges "makes the Defendant's action of termination unlawful." Dkt. No. 5 at 9. Plaintiff complains that "Defendant did not give [him] timely notice of termination (120 days previous notice as mandated by Washington State Insurance Law) . . . ." *Id.* Defendant argues that this claim should be dismissed because the statute cited by Plaintiff does not apply to his circumstances. Dkt. No. 33 at 11.

RCW Section 48.17.591 states:

> If an insurer intends to terminate a written agency contract with an independent insurance producer, the insurer shall give the insurance producer not less than one hundred twenty days'

>advance written notice of the intent, unless the reason for termination is one of the reasons set forth in RCW 48.17.530. During the notice period the insurer shall not amend the existing contract without the consent of the insurance producer.

RCW 48.17.591(2). But Section 48.17.591 is limited in its application, as subsection (5) of the Section lays out:

>This section [(Section 48.17.591)] does not apply to:
>
>(a) Insurance producers or policies of an insurer or group of insurers if the business is not owned by the insurance producer and the termination of any such contractual agreement does not result in the cancellation or nonrenewal of any policies of insurance;
>
>…
>
>(c) Life, disability, surety, ocean marine and foreign trade, and title insurance policies[.]

RCW 48.17.591(5). Plaintiff's pleaded facts show that under subsections (5)(a) and (5)(c), the statute under which he brings his claim is inapplicable.

First, Plaintiff alleges that he is an "appointed insurance producer." Dkt. No. 5 at 9. But because Plaintiff does not allege that he owns the insurance business (Americo), his circumstances fall squarely within the section (5)(a) carveout. Additionally, Plaintiff's claim arises from his sale of life insurance for Defendant (*see* Dkt. No. 5 at 8)—but this statute does not apply to life insurance policies pursuant to subsection (5)(c). Thus, Plaintiff's alleged facts show that he cannot bring a claim under RCW 48.17.591 for his complained-of conduct, and dismissal is appropriate. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("[d]ismissal can be based on the lack of a cognizable legal theory").

Accordingly, because there are no facts that he could additionally allege to cure this defect, Plaintiff's claim for unlawful or wrongful termination under RCW 48.17.591 is DISMISSED WITH PREJUDICE.

### 2. Claim for Malicious Business Practices

Plaintiff alleges that Defendant "took action in terminating policies of [his] clients outside of the expressed agreement with his clients" in violation of RCW 48.30.010. Dkt. No. 5 at 9. Plaintiff complains that Defendant "sent out letters to [his] clients stating that [he] had been terminated" and "[a]sking [his] former clients to appoint a new agent to their cases." *Id.* Plaintiff argues that "[a]ccording to . . . RCW 48.30.010 it is unlawful to speak down to or present a state insurance insurer and/or agent to another insurance agency and/or agent in a negative light or to prospective clients, also the general public." *Id.* Defendant argues that RCW 48.30.010 does not proscribe the alleged conduct, and Plaintiff's claim must therefore be dismissed. Dkt. No. 33 at 12–13.

RCW 48.30.010 prohibits (1) "unfair methods of competition" and (2) "unfair or deceptive acts or practices" as defined by the statute. But Plaintiff does not specify what statute defines his cited activity as an unfair or deceptive act or practice, and the Court will not search for arguments on Plaintiff's behalf. Accepting all of Plaintiff's pleaded facts as true, he has not stated a plausible claim for relief under RCW 48.30.010 regarding Defendant's communications with Plaintiff's former clients.

Plaintiff also alleges that Defendant improperly failed to alert him of the need to begin conservation efforts for four of his accounts during the period between his first termination and re-appointment with the Defendant, resulting in the lapse of four accounts and a $5,126 chargeback to Plaintiff upon his rehiring by Defendant. Dkt. No. 5 at 10. He cites to Defendant's guidelines as giving clients "90 days after their initial premium due date to satisfy their past due balances." *Id.*[3] But Defendant's guidelines do not provide any information regarding a client's

---

[3] Plaintiff cites to "Exhibit A" of his Complaint for this assertion, but Plaintiff does not appear to have filed any exhibits with his complaint. *See generally* Dkt. No. 5. However, Defendant's guidelines were filed as an exhibit on

1  deadline to satisfy past-due balances and Defendant's obligations to Plaintiff during that time.

2  *See generally* Dkt. No. 28-1. Defendant argues that, because the Court is "not required to accept

3  as true conclusory allegations which are contradicted by documents referred to in the complaint,"

4  *Steckman v. Hart Brewing, Inc*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), the Court must

5  disregard Plaintiff's allegations about the $5,126 chargeback in the complaint. *See* Dkt. No. 33 at

6  13. The Court agrees.

7  However, Plaintiff may be able to point to some other document which supports his

8  allegations concerning Defendant's obligations to Plaintiff regarding a client's past-due balances.

9  For that reason, the Court finds that dismissal with leave to amend is appropriate here.

10  Accordingly, Plaintiff's claim for malicious business practices under RCW 48.30.010 is

11  DISMISSED WITHOUT PREJUDICE.

12      **3.  Claim for Unfair Business Practices**

13  Plaintiff makes a second claim related to his terminations by Defendant, alleging that he

14  was "terminated without due process o[r] notice or appeal. The Plaintiff's book of business

15  developed over the time of appointment was taken from [him] without cause or notice." Dkt. No.

16  5 at 10. Plaintiff alleges that the average cost of acquisition per client is $1,280, and he seeks

17  damages for the loss of his clients. *Id.* Defendant contends that Plaintiff has not alleged "that

18  Defendant has any requirement to . . . do any of the things that he claims it must do, such as give

19  him notice or appeal." Dkt. No. 33 at 14.

---

May 3, 2024. Dkt. No. 28-1. The Court will construe the exhibits at Dkt. No. 28 as being intended to attach to Plaintiff's complaint and will consider them here. *See Atkinson v. Aaron's LLC*, No. C23-1742, 2024 WL 2133358, at *4 (W.D. Wash. May 10, 2024) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003))).

Plaintiff is obligated to plead not only facts that support a claim for relief, but also a cognizable legal theory under which he is entitled to relief. *See Balistreri*, 901 F.2d at 699. Plaintiff has alleged that he was terminated without notice or the opportunity to appeal, and that he is entitled to reimbursement of the cost of acquisition for each of the clients that he lost as a result of that termination. *See* Dkt. No. 5 at 10. But Plaintiff must also identify a cognizable legal theory under which Defendant was obligated to provide him with notice prior to termination, the opportunity to appeal his termination, or reimbursement for the cost of acquisition of his clients upon reimbursement. Plaintiff has not done so here.

Plaintiff additionally contends that Defendant did not give Plaintiff "a chance to correct his work or business before termination." Dkt. No. 5 at 11. He alleges that he was "not given the ability to dispute the accounting errors made by [Defendant's] commission reports," and that these errors have resulted in "over $17,000 in chargebacks and a loss of $24,000 in completed business." *Id.* Again, Defendant argues that Plaintiff has not alleged that Defendant has "violated any law or that even if the facts he alleges are true, Defendant would be liable for anything." Dkt. No. 33 at 14.

The Court again agrees with Defendant. Plaintiff must identify a cognizable legal theory under which he was entitled to correct his work or business prior to termination. *See Balistreri*, 901 F.2d at 699. While Plaintiff has alleged that Defendant's "errors" resulted in "over $17,000 . . . in chargebacks and a loss of $24,000 in completed business" (Dkt. No. 5 at 11), he does not allege that he performed the obligations making the amounts he claims should be paid due to him. Plaintiff must do more than simply allege that Defendants owe him commissions—he must allege specific facts showing (or allowing the Court to draw the reasonable inference) that Defendant owes him the amounts he identifies. *See Balistreri*, 901 F.2d at 699 ("[d]ismissal can be based on . . . the absence of sufficient facts alleged under a cognizable legal theory).

1      Finally, Plaintiff alleges that Defendant has unlawfully refused to re-appoint him. Dkt.
2  No. 5 at 11. Plaintiff contends that under Washington Administrative Code ("WAC")
3  284-17-439, an insurance company can only refuse to appoint an insurance producer where "the
4  license is not valid or the person is not licensed for at least one line of authority within the
5  authority of the appointing insurer or affiliating business entity." *See id.* Defendant argues that
6  "Plaintiff has not alleged that he is not eligible for electronic appointment or affiliation, that his
7  license is not valid, or that he is not licensed for at least one line of authority with the authority
8  of the appointing insurer or affiliating business entity." Dkt. No. 33 at 13.
9      Plaintiff misreads his cited WAC provision, as it simply identifies instances when an
10 insurance producer *is not eligible* for an electronic appointment or affiliation. *See* WAC
11 284-17-439. But this provision does not obligate an insurance provider to appoint every eligible
12 insurance producer. *See id.* Again, Plaintiff has not alleged a cognizable legal theory under
13 which he is entitled to relief; for this reason, his claim must be dismissed. *Balistreri*, 901 F.2d at
14 699.
15     However, at this stage of the proceedings, it is not clear that Plaintiff would be unable to
16 allege a cognizable legal theory for his claim upon amendment. Accordingly, Plaintiff's claim
17 for unfair business practices is DISMISSED WITHOUT PREJUDICE.
18     **4.      Claim for Breach of Contract**
19     Plaintiff alleges that "[t]he broker agreement [he] had with [Defendant], through . . . IMO
20 Family First Life, states that [his] commission payments will be paid within 36 hours of approval
21 of an application," and that Defendant "has yet to disclose which bank account [Plaintiff's] direct
22 deposits of commission were paid to." Dkt. No. 5 at 12. Defendant argues that Plaintiff has not
23 alleged the elements of a breach of contract, and that his claim consequently fails. Dkt. No. 33 at
24 14.

ORDER ON MOTION TO DISMISS - 13

To prevail on a breach of contract claim, Plaintiff must show: "(1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages." *Bailey-Medwell v. Hartford Life and Accident Ins. Co.*, No. C17-1697, 2018 WL 5264335, at *3 (W.D. Wash. Oct. 23, 2018) (citing *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 35 (2014)). Plaintiff adequately alleges the existence of a valid contract. Dkt. No. 5 at 12. However, he has not alleged any facts demonstrating that he fulfilled the terms of the contract and, therefore, was entitled to any commission payments; that he filed any applications for approval of commission payments; whether the contract required any commissions approved to be deposited to any particular account; or that Defendant failed to make any such payments to him. As a result, Plaintiff has not adequately alleged a claim for breach of contract.

However, at this stage of the proceedings, it is not clear that Plaintiff would be unable to allege facts demonstrating the elements of a claim for breach of contract upon amendment. Accordingly, Plaintiff's claim for breach of contract is DISMISSED WITHOUT PREJUDICE.

### 5. Claim Related to Whistleblower Violations

Plaintiff alleges that Defendant has taken "an adverse action on [Plaintiff's] appointment/employment status due to his complaints to the [Washington State Insurance Commissioner's Office.]" Dkt. No. 5 at 12. He seeks damages under 41 U.S.C. § 4712. But Plaintiff makes no allegations regarding the timing of his complaints to the state in relation to the timing of his terminations, as he must in order to allege that Defendant took adverse action as a result of his complaints. Further, 41 U.S.C. § 4712 concerns the enhancement of *contractor* protection from reprisal, but Plaintiff has not provided any facts showing that he is a contractor, so the Court is unable to determine whether this statute applies to Plaintiff's situation.

However, at this stage of the proceedings, it is not clear that Plaintiff would be unable to allege facts demonstrating the elements of a claim for whistleblower violations upon amendment.

ORDER ON MOTION TO DISMISS - 14

Accordingly, Plaintiff's claim for whistleblower violations under 41 U.S.C. § 4712 is DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss is granted. Plaintiff's claims related to COVID-19 State and Federal guidelines, taxes, malicious business practices under RCW 48.30.010, unfair business practices under WAC 284-17-439, breach of contract, and whistleblower violations under 41 U.S.C. § 4712 are DISMISSED WITHOUT PREJUDICE. Plaintiff's claim for unlawful or wrongful termination under RCW 48.17.591 is DISMISSED WITH PREJUDICE.

Plaintiff is ORDERED to file any amended complaint consistent with this Order by no later than January 10, 2025.

Dated this 11th day of December 2024.

Tana Lin
United States District Judge