UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVIS GLENN,<br><br>      Plaintiff,<br> v.<br>AMERICO,<br><br>      Defendant. | CASE NO. 2:24-cv-00184-TL<br><br>ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT |

This matter is before the Court on Defendant Americo's motion to dismiss Plaintiff Travis Glenn's second amended complaint (Dkt. No 65). Dkt. No. 69. Having considered Plaintiff's response (Dkt. No. 71), Defendant's reply (Dkt. No. 77), and the relevant record, the Court GRANTS the motion.

## I. BACKGROUND

### A. Factual Background

This case arises from Plaintiff's allegedly improper termination from his appointment with Defendant as an independent life insurance broker. *See* Dkt. No. 65 (second amended

complaint) at 3. Plaintiff was appointed "as an independent life insurance broker" with Defendant in February 2021, which allowed him to present Defendant's "life insurance, health and financial protection products to his clients." *Id.* at 2. Plaintiff's first appointment with Defendant began in February 2021 and was ended by Defendant in July of the same year. *Id.* at 3. Plaintiff was reappointed in September 2021 and terminated again in January 2022. *Id.* Plaintiff alleges that he did not receive notice from Defendant prior to either termination. *Id.* at 4.

During Plaintiff's tenure with Defendant, Plaintiff "paid the price of acquisition for all of his clients"—yet while Plaintiff alleges that the average cost to acquire each client within the insurance industry is $1,280, he does not detail the specific prices of acquisition that he actually paid. *Id.* at 8.

Following Plaintiff's first termination, Defendant sent letters to Plaintiff's clients indicating that Plaintiff had been terminated from his appointment with Defendant and asking the clients to "appoint a new agent to their cases." *Id.* at 5.

Between Plaintiff's first termination and his second appointment with Defendant, four of Plaintiff's previous accounts lapsed. *Id.* at 7. Plaintiff did not receive notice "that these accounts were pending lapse." *Id.* When Plaintiff was appointed for the second time, he had a $5,126 "chargeback" from Defendant. *Id.* Plaintiff describes "chargebacks" as "[r]eversal[s] of commission payments previously paid to an agent." Dkt. No. 65-1 at 1.

Following Plaintiff's second termination, Defendant submitted a report to "Vector One," which is a "Commercial Debt posting board for insurance and business to business debt," and which other carriers use "to determine the quality of business a prospective agent might bring with a new appointment." Dkt. No. 65 at 9. Due to Defendant's report, Plaintiff alleges that he has been "unable to gain appointments with some of the preferred carriers." *Id.* Defendant also made Plaintiff ineligible for re-appointment following his second termination. *Id.*

ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT - 2

### B. Procedural Background

Plaintiff filed his first complaint on February 13, 2024. Dkt. No. 5. Following a motion to dismiss by Defendant (Dkt. No. 33), Plaintiff's complaint was dismissed with leave to amend in December 2024 (Dkt. No. 59). Plaintiff filed his first amended complaint in March 2025 (Dkt. No. 64), after requesting and receiving an extension of time to file his amended pleading (Dkt. Nos. 62, 63). Less than a week later, Plaintiff filed the operative second amended complaint. Dkt. No. 65. Shortly thereafter, Plaintiff filed a third amended complaint. Dkt. No. 67.

Plaintiff has also filed a motion for preliminary injunction, which remains pending. Dkt. No. 68. Additionally, Plaintiff has filed a motion for leave to amend the civil cover sheet to assert "diversity" jurisdiction, rather than "federal question" jurisdiction, which remains pending. Dkt. No. 82. Plaintiff is proceeding pro se.

## II. LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### A. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss may be brought where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject-matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "Standing" examines whether a plaintiff is entitled to bring their claims before the court and is an essential ingredient of determining a court's jurisdiction. *See Perry v. Newsom*, 18 F.4th 622, 630–31 (9th Cir. 2021). For a plaintiff to have standing to bring a lawsuit, they must demonstrate an injury that is (1) "concrete, particularized, and actual or imminent" (also known as the "injury-in-fact"), (2)

"fairly traceable to the challenged action," and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

"When reviewing a dismissal pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

**B.    Motion to Dismiss Under Rule 12(b)(6)**

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing an FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party.'" *DaVinci Aircraft, Inc.*, 926 F.3d at 1122 (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC*, 859 F.3d at 1156–57).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Or. Clinic, PC v. Fireman's Fund Ins. Co.*, 75

F.4th 1064, 1073 (9th Cir. 2023) (citing S*chreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). A revised complaint would replace the current complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012) (en banc) ("the general rule is that an amended complaint supersedes the original complaint and renders it without legal effect"). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### III.  DISCUSSION

**A.  Preliminary Matters**

    **1.  Operative Complaint**

Plaintiff first argues that the second amended complaint, which Defendant's motion largely references, "was superseded by the updated and corrected version of the Amended Complaint filed by the Plaintiff on April 8, 2025" (i.e., the third amended complaint (Dkt. No. 67)). Dkt. No. 71 at 2. But as Plaintiff points out, under Federal Rule of Civil Procedure 15, "A party may amend its pleading *once* as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1) (emphasis added); *see* Dkt. No. 71 at 2. The Rule continues: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

The Court dismissed Plaintiff's complaint with leave to amend in December 2024 and set a deadline of January 10, 2025, for Plaintiff to file any amended complaint consistent with that Order. Dkt. No. 59. After seeking and receiving an extension of time (*see* Dkt. Nos. 62 (motion), 63 (order)), Plaintiff filed his first amended complaint in March 2025 (Dkt. No. 64). In quick

succession thereafter, Plaintiff filed a second and then third amended complaint. Dkt. Nos. 65, 67. All of these complaints were filed prior to the deadline set by the Court for Plaintiff to file an amended complaint.

The second and third amended complaints contain an exhibited glossary of definitions; the first, second, and third amended complaints are otherwise identical. *Compare* Dkt. No. 64, *with* Dkt. No. 65, *and* Dkt. No. 67. Plaintiff's second and third amended complaint were improperly filed, as neither were timely filed under Rule 15(a)(1) or filed with leave from the Court or Defendant's written consent under Rule 15(a)(2). *See* Dkt. Nos. 65, 67. However, as all three complaints are identical (exclusive of exhibits) and because Defendant moves to dismiss Plaintiff's second amended complaint (*see* Dkt. No. 69 at 8 n.2), the Court will consider Plaintiff's second amended complaint for the purposes of this order.

### 2. Whether Defendant's Motion Should be Treated as a Motion for Summary Judgment

Plaintiff argues that "Defendant's Motion to Dismiss appears to delve into factual matters beyond the scope permissible for a motion under Rule 12(b)," and that the instant motion should accordingly be treated as a motion for summary judgment. Dkt. No. 71 at 3. However, Plaintiff does not identify what "factual matters" he asserts Defendant improperly disputes, and Defendant does not appear to rely on evidence outside Plaintiff's pleadings in its motion. Accordingly, the Court declines to treat Defendant's motion as one for summary judgment.

### 3. Plaintiff's Jurisdictional Allegations

Plaintiff has moved to "clarify that the correct jurisdictional basis of this action" is diversity jurisdiction, and for clarification or reconsideration of any prior rulings as appropriate. *See* Dkt. No. 82, 82-2. Plaintiff contends that the Court's prior rulings "are predicated on [the Court's] mistaken understanding of the case as a 'federal question' matter." *Id.* at 2 (cleaned up).

Plaintiff is correct that he brought this case as a diversity action. *See* Dkt. No 5-1 (Civil Cover Sheet); Dkt. No. 65 (Second Amended Complaint) at 1–2. The Court has not misunderstood this fact.[1] More importantly, however, the Court's analysis of Plaintiff's claims has not been impacted by the specific basis asserted for the exercise of federal jurisdiction. Where Plaintiff's claims are based in Washington state law, the Court has applied Washington law to the claims. *See, e.g.*, Dkt. 59 at 8–9 (applying RCW 48.17.591), 10–11 (applying RCW 48.30.010).

The Court's prior order did not dismiss any of Plaintiff's claims for lack of either diversity or federal question jurisdiction; it dismissed Plaintiff's claims for lack of standing. *See* Dkt. No. 59 at 6–7 (dismissing claim related to Covid-19 state and federal guidelines because Plaintiff failed to allege he suffered any injury); *id.* at 7–8 (dismissing claim related to taxes because Plaintiff had only alleged possible future injury, which was insufficient to establish standing). An inquiry into standing looks at whether a plaintiff has articulated a "case or controversy" between himself and the defendant "within the meaning of Article III by demonstrating a sufficient personal stake in the outcome." *Fleck and Associates, Inc. v. Phoenix, City of, an Arizona Municipal Corp.*, 471 F.3d 1100, 1103 (9th Cir. 2006) (cleaned up) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). This analysis is the same for cases brought under either diversity or federal question jurisdiction. In other words, even if the Court did mistake the basis of its jurisdiction—which it did not—such mistake had no effect on the Court's prior (or present) rulings.

---

[1] Plaintiff appears to be concerned about docket text identifying "federal question" as basis for jurisdiction over this case. Dkt. No. 82 at 4; *see generally Docket*. However, this is merely an administrative notation. It was not made by the Court and has not influenced the Court's understanding of the pleadings in this case.

ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT - 7

B.  **Dismissal for Lack of Standing**

Defendant challenges Plaintiff's purported legal theories of "unlawful disregard to COVID-19 state and federal guidelines" and "taxes" under Rule 12(b)(1), arguing that Plaintiff lacks standing to bring these claims. Dkt. No. 69 at 22, 25. Plaintiff's claims under these theories were previously dismissed for lack of standing. Dkt. No. 59 at 7–8.

1.  **Claim Related to Covid-19 State and Federal Guidelines**

Like in his original complaint, Plaintiff alleges that Defendant's failure to provide a 60-day extension of the grace period for clients to satisfy their past-due balances resulted in the improper termination of Plaintiff's clients' policies. Dkt. No. 65 at 7–8; *see also* Dkt. No. 59 at 7. Plaintiff has amended his complaint to additionally state: "Being a direct result of the Defendant's actions, intentional and/or negligent, the Plaintiff Travis M. Glenn has suffered significant damages to be determined at trial." Dkt. No. 65 at 8.

However, Plaintiff has still not articulated *what* injury he suffered due to the complained-of conduct. As the Court previously explained to Plaintiff, he must plead an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Dkt. No. 59 at 6 (quoting *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018)). "[C]onclusory allegations of standing are insufficient." *Manzanarez v. Madera Collection Servs.*, 722 F. Supp. 3d 1074, 1080 (E.D. Cal. 2024) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Plaintiff alleges he was injured as a direct result of Defendant's conduct but presents no specific factual allegations plausibly tying any of Defendant's actions to any injury suffered by Plaintiff. This is insufficient to establish standing. *See, e.g.*, *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (finding statement that "[b]ased on information and belief, the fraudulent use of Plaintiff Daniel's debit card was caused in part by the inclusion of the expiration date of her debit card on the receipt of her purchase

from Defendant National Park Service" was a legal conclusion and insufficient to support standing).

Plaintiff argues that "Defendant's disregard for COVID-19 guidelines led to the termination of client policies," which in turn "directly resulted in financial losses to the Plaintiff through chargebacks and lost commissions." Dkt. No. 71 at 4. But Plaintiff does not explain what chargebacks and lost commissions he suffered, or how Defendant's "disregard" for Covid-19 guidelines caused those losses—for example, he does not explain how the chargebacks work or why he alleges they were improperly issued, or what commissions he was entitled to and lost. *See generally* Dkt. No. 65.

Therefore, Plaintiff's claim related to Covid-19 state and federal guidelines is DISMISSED.

**2.     Claim Related to Taxes**

Like in his original complaint, Plaintiff alleges that Defendant has failed to send him any tax information to date and that, as a result, he may be penalized for filing his taxes late. Dkt. No. 65 at 11; *see also* Dkt. No. 59 at 7. The Court previously dismissed this claim for lack of standing, explaining that allegations of possible future injury were insufficient to establish standing. Dkt. No. 59 at 8.

Plaintiff's only amendment to this claim was to add the allegation that "[i]t would appear by speculation that Americo does not want a legal record of our relationship" and that "Plaintiff believes this to be another element of Constructive Fraud." *Compare* Dkt. No. 65 at 11, *with* Dkt. No. 5 at 12. He argues that "Defendant's failure to provide accurate and timely tax information . . . has the potential to cause financial harm to the Plaintiff, such as penalties for incorrect or late filings." Dkt. No. 71 at 4. But again, the "potential" to cause injury is not sufficient to establish injury for purposes of standing. Further, these events occurred in 2022—nearly three years before Plaintiff filed his amended complaint—and Plaintiff should already know what (if any)

tax ramifications he is facing. As Plaintiff has not amended his complaint to add any further allegations of injury, his claim fails again for the same reasons. *See* Dkt. No. 59 at 7–8.

Therefore, Plaintiff's claim related to taxes is DISMISSED.

C.  **Dismissal for Failure to State a Claim**

Defendant additionally seeks to dismiss all of Plaintiff's claims for failure to state a cause of action. Dkt. No. 69 at 18. The Court discusses each of Plaintiff's remaining claims in turn.

1.  **Claim for Unlawful or Wrongful Termination**

As the Court explained in its Order on Defendant's first motion to dismiss, Plaintiff's alleged facts show that he cannot bring a claim under RCW 48.17.591. *See* Dkt. No. 59 at 9. The Court previously dismissed Plaintiff's claim for unlawful or wrongful termination under RCW 48.17.591 with prejudice (*see id.*); accordingly, the Court will not consider his claim under this statute (*see* Dkt. No. 65 at 4–5) again.

Plaintiff has amended this claim to include several other statutes under which he asserts his claim for wrongful or unlawful termination may arise. *Compare* Dkt. No. 65 at 4–5, *with* Dkt. No. 5 at 9. The Court will discuss each of these in turn.

Plaintiff cites to RCW 48.30.010 as underlying his claim for wrongful or unlawful termination. Dkt. No. 65 at 4. This statute states that "No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section." RCW 48.30.010(1). But Plaintiff does not identify any subsection of the statute that defines termination without cause or notice as an unfair or deceptive act or practice in the conduct of insurance business, and the Court can find none. *See generally* Dkt. No. 65 at 3–5; RCW 48.30.010–.900. Finally, beyond merely asserting that Defendant is subject to the statute, Plaintiffs provides no facts supporting how Defendant

violated this statute. Accordingly, Plaintiff has failed to state a claim for wrongful or unlawful termination under RCW 48.30.010.

Plaintiff also cites to 15 U.S.C. § 6701 as underlying his claim for wrongful or unlawful termination but again offers no explanation as to how that statute relates to his claim, and the Court can find none. *See* Dkt. No. 65 at 4. Accordingly, Plaintiff has failed to state a claim for wrongful or unlawful termination under 15 U.S.C. § 6701.

Finally, Plaintiff asserts that Defendant's allegedly unlawful termination has violated "IFCA, Washington State Insurance Law, Tort Law, United States Code, and Constructive Fraud." Dkt. No. 65 at 5. But the conclusory allegation that Defendant violated various laws is not entitled to a presumption of truth, and Plaintiff has offered no factual allegations detailing how Defendant allegedly violated these laws.

Therefore, Plaintiff's claim for unlawful or wrongful termination is DISMISSED.

### 2. Claim for Malicious Business Practices

Plaintiff's amended claim for malicious business practices is predicated on Defendant's "letters [sent] to [Plaintiff's] clients stating that [he] had been terminated and asking [his] former clients to appoint a new agent to their cases." Dkt. No. 65 at 5. Plaintiff contends that these letters unlawfully "speak down or present a state insurance insurer and/or agent to another insurance agency and/or agent in a negative light or to prospective clients, also the general public," in violation of RCW 48.30.010. Dkt. No. 65 at 6.

Plaintiff also alleges that Defendant improperly failed to alert him of the need to begin conservation efforts for four of his accounts during the period between his first termination and re-appointment with the Defendant, resulting in the lapse of four accounts and a $5,126 chargeback to Plaintiff upon his rehiring by Defendant. Dkt. No. 65 at 6–7. He cites to Defendant's guidelines as giving clients "90 days after their initial premium due date to satisfy

their past due balances." *Id.* at 6. But as the Court already informed Plaintiff, the guidelines to which he cites do not provide any information regarding a client's deadline to satisfy past-due balances or Defendant's obligations to Plaintiff during that time. Dkt. No. 59 at 10–11. *See generally* Dkt. No. 28-1. And because the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," S*teckman v. Hart Brewing, Inc*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), it cannot determine that Defendant violated its own guidelines in issuing a chargeback to Plaintiff such that a claim for malicious business practices arises.

Plaintiff again cites RCW 48.30.010 as underlying his claim. That statute prohibits (1) "unfair methods of competition" and (2) "unfair or deceptive acts or practices" as defined by the statute. But as the Court previously cautioned Plaintiff, he "does not specify what statute defines his cited activity as an unfair or deceptive act or practice, and the Court will not search for arguments on Plaintiff's behalf." Dkt. No. 59 at 10. Plaintiff has not remedied this omission in his second amended complaint. *See* Dkt. No. 65 at 5–7.

Plaintiff also cites to 15 U.S.C. Chapter 9 as underlying his claim for malicious business practices; however, as Defendant points out, that statute relates to the National Weather Service, not to antitrust laws as Plaintiff contends. *See* Dkt. No. 69 at 20. Plaintiff has failed to articulate how Defendant has violated 15 U.S.C. Chapter 9[2] by its actions.

Finally, Plaintiff asserts that Defendant has violated "IFCA, Washington State Insurance Law, Tort Law, United States Code, and Constructive Fraud." Dkt. No. 65 at 7. But the conclusory allegation that Defendant violated various laws is not entitled to a presumption of

---

[2] Or 15 U.S.C. §§ 6701–81, which may be the statute Plaintiff intended to cite.

truth, and Plaintiff has offered no factual allegations detailing how Defendant allegedly violated these laws.

Therefore, Plaintiff's claim for malicious business practices is DISMISSED.

### 3. Claim for Unfair Business Practices

Plaintiff re-pleads his claim for unfair business practices, but again fails to identify a cognizable legal theory under which he was entitled to notice prior to termination, the opportunity to appeal his termination, reimbursement for the cost of acquisition of his clients, or the opportunity to correct his work or business prior to termination. *See* Dkt. No. 65 at 8–10. Plaintiff again alleges that he was "terminated without due process of notice or appeal. The Plaintiff's book of business developed over the time of appointment was taken from [him] without cause or notice." Dkt. No. 65 at 8. He alleges that the average cost of acquisition per client is $1,280, and he seeks damages for the loss of his clients. *Id.* Additionally, Plaintiff contends that Defendant did not give Plaintiff "a chance to correct his work or business before termination." *Id.*

Plaintiff asserts that these actions violated "IFCA, Washington State Insurance Law, Tort Law, United States Code, and Constructive Fraud." Dkt. No. 65 at 7. But the conclusory allegation that Defendant violated various laws is not entitled to a presumption of truth, and Plaintiff has offered no factual allegations detailing how Defendant allegedly violated these laws, or how these laws impose a requirement upon Defendant to provide Plaintiff with notice prior to termination, the opportunity to appeal his termination, reimbursement for the cost of acquisition of his clients, or the opportunity to correct his work or business prior to termination.

Therefore, Plaintiff's claim for unfair business practices is DISMISSED.

####    4.    Claim Related to "Untimely Commission"

As with Plaintiff's first claim related to untimely commissions, the Court will construe this as a breach of contract claim. *See* Dkt. No. 59 at 13. Plaintiff again alleges that "[t]he broker agreement [he] had with [Defendant], through . . . IMO Family First Life, states that [his] commission payments will be paid within 36 hours of approval of an application," and that Defendant "has yet to disclose which bank account [Plaintiff's] direct deposits of commission were paid to." Dkt. No. 65 at 10.

To prevail on a breach of contract claim, Plaintiff must show: "(1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages." *Bailey-Medwell v. Hartford Life and Accident Ins. Co.*, No. C17-1697, 2018 WL 5264335, at *3 (W.D. Wash. Oct. 23, 2018) (citing *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 35 (2014)). As before, Plaintiff adequately alleges the existence of a valid contract. Dkt. No. 65 at 10. However, Plaintiff has still not alleged any facts demonstrating (a) that he fulfilled the terms of the contract and, therefore, was entitled to any commission payments; (b) that he filed any applications for approval of commission payments; (c) whether the contract required any commissions approved to be deposited to any particular account; or (d) that Defendant failed to make any such payments to him. As a result, Plaintiff has still not adequately alleged a claim for breach of contract.

Therefore, Plaintiff's claim for breach of contract is Dismissed.

####    5.    Claim Related to Whistleblower Violations

Plaintiff again brings a claim related to "whistleblower violations" in his second amended complaint. Dkt. No. 65 at 10–11. He alleges that Defendant has taken "an adverse action on [Plaintiff's] appointment/employment status due to his complaints to the [Washington State Insurance Commissioner's Office,]" and seeks damages under 41 U.S.C. § 4712. *Id.*

But as with his original claim for whistleblower violations, Plaintiff makes no allegations regarding the timing of his complaints to the state in relation to the timing of his terminations, as he must in order to allege that Defendant took adverse action as a result of his complaints. *See id.*; *see also* Dkt. No. 59 at 14. And as the Court previously explained, 41 U.S.C. § 4712 concerns the enhancement of contractor protection from reprisal; Plaintiff has still provided no facts showing that he is a contractor, and the Court therefore cannot determine that 41 U.S.C. § 4712 applies to Plaintiff's situation. Dkt. No. 59 at 14.

Therefore, Plaintiff's claim related to whistleblower violations is DISMISSED.

**D.    Leave to Amend**

The Court previously provided Plaintiff with notice of his complaint's deficiencies and gave him an opportunity to amend his complaint. *See generally* Dkt. No. 59. However, Plaintiff's second amended complaint largely contains the same deficiencies as his original complaint, and he failed to add further factual allegations where the Court identified they were necessary.[3] Therefore, the Court determines that further opportunity to amend would be futile.

### IV.    CONCLUSION

Accordingly, the Court GRANTS Defendant's motion to dismiss, and Plaintiff's complaint is DISMISSED WITH PREJUDICE. Plaintiff's motion for preliminary injunction (Dkt. No. 68) and motion to amend basis of jurisdiction (Dkt. No. 82) are DENIED AS MOOT.

Dated this 15th day of July 2025.

Tana Lin
United States District Judge

---

[3] Upon review, Plaintiff's third amended complaint (Dkt. No. 67) contains the same deficiencies as his second amended complaint (Dkt. No. 65).